IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Tiberius Mays (#N-92625),　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　)　　Case No. 15 C 50105
　　　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　Judge Philip G. Reinhard
Nedra Chandler, et al.,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　)

## ORDER

Defendants' motion to dismiss on the basis of improper joinder [20] is granted in part and denied in part. The court dismisses as improperly joined plaintiff's claim against defendant Heath. The court instructs the clerk to terminate Heath as a defendant in this matter. Dismissal is without prejudice to filing a separate lawsuit against Heath. The remaining defendants are directed to answer or otherwise plead by January 11, 2016.

## STATEMENT

Plaintiff Tiberius Mays, an Illinois state prisoner and a frequent litigant in federal court, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants, officials at the Dixon Correctional Center, violated plaintiff's constitutional rights by embarking on a campaign of harassment and retaliation against him for filing grievances and lawsuits, and for writing to newspapers about the conditions of his confinement. This matter is before the court for ruling on defendants' motion to dismiss the complaint on the basis of purported misjoinder. For the reasons stated in this order, the court grants the motion only with respect to a single claim and defendant.

### Facts and Background

Plaintiff is an Illinois state prisoner, confined at the Dixon Correctional Center at all times relevant to this action. The IDOC website reflects that plaintiff is serving a 50-year sentence for armed robbery and attempted murder. Defendants Nedra Chandler, Jamie Harris, Christopher Heath, Jose Hernandez, Daniel Justice, Joanna Kemmeren, Steven Lopez, Richard Perry, Matt Smith, Lisa Devert, and Robert Linboom are or were all correctional officers or administrators at Dixon at the time of the events giving rise to this lawsuit.

Plaintiff alleges the following facts, which must be taken as true, and which the court has re-ordered to set forth the events in chronological order as much as possible: plaintiff arrived at the Dixon Correctional Center in April 2003. In 2007 or 2008, plaintiff began writing letters to area newspapers in which he apparently complained about prison conditions. Multiple correctional

officers criticized plaintiff for his letters to the editor; some officers responded with their own letters to the editor.

In April 2012, plaintiff started work as a sanitation specialist ("porter") in the prison's health care unit. Plaintiff's supervisor, defendant Heath, insisted that he should arrive at work by 7:00 a.m., which was an unreasonable and impossible demand because inmate movement did not start before 8:30 a.m. Heath also made racist jokes to plaintiff and harassed him about all of his legal calls to attorneys. After plaintiff filed grievances against him, Heath issued plaintiff a false disciplinary report on May 24, 2012. The next day, plaintiff was removed from his porter position. When plaintiff decried his plight to Warden Chandler, she assured him that she had "no problem" with his getting his job back.

In reaction to plaintiff's newspaper submissions, defendants Perry and Hernandez made "constant negative comments" to him. When plaintiff confronted the officers about their perceived hostility towards him, both Perry and Harris allegedly stated on multiple occasions, "I'm going to get you." Perry and Harris eventually issued false and retaliatory disciplinary reports in October 2012 and January 2013.

In February 2013, plaintiff became eligible to work in Dixon's eyeglass industry, evidently a highly desired inmate job. However, Defendant Devert, the acting superintendent of Industries at Dixon, refused to consider plaintiff for a position. Devert maintained that she could "do whatever I want," but provided the pretextual explanation that she was not hiring plaintiff because he had accumulated three disciplinary reports within a year. Devert also mentioned plaintiff's letters to the newspapers as an issue. Devert instead installed two other prisoners who had been on the waiting list a much shorter time than plaintiff.

In June 2013, plaintiff started another porter job in a different area of the health care unit. Plaintiff routinely asked a control officer on another floor for gloves to protect himself against mold and bodily fluids. No one ever provided training for handling blood, urine, or feces, and no one ever informed plaintiff that he was not following proper procedure in going to a different floor to ask for gloves.

At some point during his incarceration at Dixon, plaintiff filed a grievance against defendant Justice accusing him of harassing black prisoners. On July 4, 2013, Justice found plaintiff looking for gloves on a different floor than the one where he was assigned to work. Justice reportedly stated, "I finally got you!" Justice issued plaintiff a false disciplinary report for unauthorized movement. Correctional officials once again terminated plaintiff from his custodial job assignment.

On July 10, 2013, plaintiff appeared before a prison adjustment committee for a hearing on the disciplinary report. Defendants Kemmeren and Hernandez served on the adjustment committee. Plaintiff noticed on arrival that the paperwork on Kemmeren's desk in front of her was already marked to indicate that he had been found guilty of the charge. During the hearing, Kemmeren told plaintiff that he should have known better than to go to a different floor without

permission. She also allegedly added [presumably referring either to the disciplinary report, the disciplinary conviction she was about to impose, or both], "That's what you get for filing lawsuits and writing newspaper articles." Plaintiff filed a grievance against Kemmeren after the hearing. Unlike plaintiff, another inmate found guilty of unauthorized movement was not punished with segregation.

Three days later, plaintiff declared a hunger strike. Plaintiff also refused medication during the hunger strike. Defendants Smith, George, and Linboom refused either to honor the hunger strike or to follow proper protocol relating to inmate hunger strikes. While plaintiff was engaged in the strike, officers notified him that he was being moved to a different cell in the segregation unit even though departmental rules prohibited a move to anywhere but the health care unit during a hunger strike. Moreover, defendant Linboom wrote plaintiff a false disciplinary report for refusing to move to his newly assigned cell. Defendant Kemmeren refused to recuse herself from the ensuing adjustment committee proceedings.

Defendant Lopez was an adjustment committee member at certain, unspecified disciplinary hearings at Dixon.

Warden Chandler ultimately expunged some of the disciplinary convictions plaintiff accumulated between 2008 and 2013 [again, he does not provide any particulars].

Plaintiff wrote letters to and personally spoke with Warden Chandler, who promised to investigate his various concerns; however, plaintiff was not aware of any action she may have taken. Nor did plaintiff receive a response when he wrote to the IDOC's Deputy Director.

On August 14, 2013, correctional officials transferred plaintiff from a minimum security unit at Dixon to the Lawrence Correctional Center, a medium security facility that presented much harsher conditions of confinement. Plaintiff contends that other inmates found guilty of similar offenses were not transferred to another prison, or even sent to segregation.

While still at Dixon, plaintiff filed grievances concerning the incidents of July 2013. However, his counselor (Marten, not a defendant) refused to forward correctional officials' responses to those grievances to plaintiff at his new place of confinement.

Plaintiff is currently confined at the Centralia Correctional Center.

### Analysis

The court is satisfied that plaintiff's claims are, for the most part, properly joined. In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit examined a prisoner complaint containing a laundry list of grievances. The Court of Appeals admonished the district court for failing to "question" the plaintiff's decision to "join 24 defendants, and approximately 50 distinct claims, in a single suit." *George*, 507 F.3d at 607. As discussed in *George*,

> The controlling principle appears in Fed. R. Civ. P. 18(a): "A party asserting a claim to relief . . . may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.

*George*, 507 F.3d at 607. In addition, Fed. R. Civ. P. 20(a)(2) permits joinder of defendants if (A) "any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

In the case at bar, aside from a potential defense of timeliness as to this claim, the court can discern no nexus between plaintiff's claim against defendant Heath and his claims against the other defendants. Plaintiff contends that Heath was a racist and that he retaliated against plaintiff for filing a grievance against him in 2012. Although plaintiff advances similar causes of action against other defendants in this case, those claims are entirely unrelated to plaintiff's dispute with Heath. Plaintiff must file a separate lawsuit if he wishes to pursue his claim against Heath.

On the other hand, all of plaintiff's remaining claims are arguably connected in some way. Either plaintiff (1) has alleged that he was punished for writing to newspapers, or (2) asserts multiple claims against a given defendant, at least one of which in some way involves alleged threats pertaining to plaintiff's habit of writing to newspapers, or (3) sets forth a sequence of closely related events sharing the same root [for example, plaintiff's second discharge from his porter job in 2013, the ensuing disciplinary proceedings, his hunger strike, and the next disciplinary proceedings all occurred in quick succession, supporting—at least at the pleading stage—inferences of retaliation and relatedness]. The court is satisfied that plaintiff's remaining claims are properly joined.

For the foregoing reasons, the court grants defendants' motion to dismiss only to the extent that plaintiff must file a separate lawsuit concerning his claim against defendant Heath. The motion is denied in all other respects. This order addresses only the issue of joinder; the court makes no findings as to timeliness, exhaustion of administrative remedies, the substantive merit of plaintiff's claims, or any other matter at this time. The court directs the remaining defendants to answer or otherwise respond to the complaint.

Date: 12/10/2015          ENTER:

*Philip G. Reinhard*
United States District Court Judge

Notices mailed by Judicial Staff. (MM)